**WEINER LESNIAK, LLP**
**629 Parsippany Road**
**Parsippany, New Jersey 07054-0438**
**(973) 403-1100    (973) 403-0010 (fax)**
**rrudin@weinerlesniak.com**
**Attorneys for Plaintiffs New Jersey Thoroughbred**
**Horsemen's Association, Inc., Thoroughbred**
**Breeders Association of New Jersey,**
**the Standardbred Breeders and Owners**
**Association of New Jersey, Inc., and Raymond J. Lesniak**

**ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.**
**Two North Road**
**P.O. Box 4922**
**Warren, New Jersey 07059**
**(732) 805-3360    (732) 805-3346 (fax)**
**embernstein@embalaw.com**
**Attorneys for Plaintiff Interactive Media Entertainment**
**& Gaming Association, Inc.**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERACTIVE MEDIA ENTERTAINMENT & GAMING ASSOCIATION, INC., NEW JERSEY THOROUGHBRED HORSEMEN'S ASSOCIATION, INC., THOROUGHBRED BREEDERS ASSOCIATION OF NEW JERSEY, STANDARDBRED BREEDERS & OWNERS ASSOCIATION OF NEW JERSEY, INC., AND RAYMOND J. LESNIAK, individually and as a member of the New Jersey Senate,<br><br>                       Plaintiffs,<br><br>    vs.<br><br>UNITED STATES ATTORNEY GENERAL ERIC H. HOLDER, JR., UNITED STATES ATTORNEY FOR THE DISTRICT OF NEW JERSEY RALPH J. MARRA, JR., and ABC SPORTS ORGANIZATIONS, 1 to 1000,<br>                     Defendants. | CIVIL ACTION NO.-_____(____)<br><br><br>HON. _____, U.S.D.J.<br><br><br><br>**COMPLAINT**<br>**AND DEMAND FOR**<br>**DECLARATORY RELIEF** |

PLAINTIFFS, INTERACTIVE MEDIA ENTERTAINMENT AND GAMING ASSOCIATION, INC., a not for profit corporation formed under the laws of the State of New Jersey and with its office and principal place of business at 2020 Pennsylvania Ave. NW, No. 372, Washington, D.C. 20006, the NEW JERSEY THOROUGHBRED HORSEMEN'S ASSOCIATION, INC., with its principal place of business at 232A Norwood Avenue, West Long Branch, NJ 07764, the THOROUGHBRED BREEDERS ASSOCIATION OF NEW JERSEY, with its office and principal place of business at 265 Highway 36, Suite 1R, West Long Branch, New Jersey 07764, the STANDARDBRED BREEDERS & OWNERS ASSOCIATION OF NEW JERSEY, INC., with its office and principal place of business at 64 Route 33, Manalapan, NJ, 07726, and RAYMOND J. LESNIAK, individually as a resident of the State of New Jersey and as a member of the New Jersey State Senate (hereinafter in both capacities "Senator Lesniak") with his principal office located at 985 Stuyvesant Avenue, Union, New Jersey 07083, by way of Complaint against the named Defendants, says:

## JURISDICTION

1.      This matter asserts claims for relief based on constitutional claims and the court has jurisdiction over the matters herein pursuant to the provisions of 28 *U.S.C.* § 1331, 28 *U.S.C.* § 1346, 28 *U.S.C.* § 3704 and 31 *U.S.C.* § 5365 and other applicable Federal statutes laws, rules and regulations therein made and provided.

## VENUE

2.      This matter is properly venued in the United States District Court for the District of New Jersey because, as is more fully averred below, the individual(s) and/or business entity

members of the Plaintiffs face civil actions in and about the District of New Jersey among other Districts and jurisdictions.

## PARTIES

3.    Plaintiff Interactive Media Entertainment & Gaming Association, Inc., (hereinafter referred to as "iMEGA"), is a not-for-profit corporation duly formed and constituted under the laws of the State of New Jersey and which has applied for status as a not for profit corporation under § 501(c)(6) of the Internal Revenue Code.    Joseph M. Brennan, Jr. is iMEGA's Chairman and Chief Executive Officer.

4.    iMEGA itself does not engage in electronic gaming by and through the Internet as hereinafter described, but engages in the collection and dissemination of information and advice regarding such services to its members and members of the general public in various media, including speech, print and Internet media although members engage in electronic gaming through the Internet.

5.    The members of iMEGA engage in electronic gaming by and through the Internet as hereinafter described, and some of its members are individuals and/or business entities engaged in the business of providing interactive entertainment services to individuals through the use of personal computers, both with and without a fee, for the said entertainment services.

6.    Among other entertainment services, some of iMEGA's members provide an Internet gambling opportunity to private individuals located both within and beyond the territorial borders of the United States of America as a form of entertainment which can be engaged in by persons within the privacy of their homes and/or other places using private personal computers.

3

7.     iMEGA members who are engaged in the business of providing an Internet gambling opportunity to private individuals are, on information and belief, located within the territorial limits of the State of New Jersey, in all fifty (50) states of the United States and its territories, as well as Tribal lands, and throughout the world.

8.     The New Jersey Thoroughbred Horsemen's Association, Inc. (hereinafter referred to individually as the "Thoroughbred Horsemen" or collectively with plaintiffs Thoroughbred Breeders Association of New Jersey and the Standardbred Breeders & Owners Association of New Jersey, Inc. as the "N.J. Horsemen's Associations"), is the official representative of the interests of thoroughbred owners, trainers and others associated with the thoroughbred racing industry in New Jersey and operates as a non-profit corporation to protect the interests of this group.

9.     The Thoroughbred Horsemen's purpose is to foster, promote, and otherwise encourage a healthier economic climate and a higher level of public acceptance of the thoroughbred horse industry in New Jersey and to better relations among its participants as well as informing and educating its members and other segments of the horse industry in order to foster a better understanding of this industry by the horse racing community and to arrange for publications, seminars and any other activities or services which will achieve such purposes.

10.     The Thoroughbred Horsemen provide financial assistance and aid for the care, medical attention, hospitalization, funeral and burial of members and licensed stable employees of members while at race tracks and training facilities approved by the New Jersey Racing Commission as well as former members and former stable employees of members who, because of age and/or disability, have become incapable of self support..

11.     The Thoroughbred Horsemen also work for the improvement of living and working conditions for the employees of members by providing retirement benefits for those who have devoted a significant portion of their working careers caring for horses at New Jersey race tracks as well as making available support programs for religious, social or health needs, including chemical dependency.

12.     The Thoroughbred Horsemen serve to protect the safety of members, their stable personnel, and their horses by working with racetrack management to ensure acceptable training and stable area conditions, proper emergency procedures, responsible vanning service and reasonable stabling procedures as well as representing the interests and property rights of its members in any matters with any racing association, jockeys organization or any other industry related organization regarding, but not limited to, purse structure and distribution, off track betting, simulcasting, television rights, interest generated on member's monies, jockey's fees and any contracts involving horsemen's interests.

13.     The Thoroughbred Breeders Association of New Jersey (hereinafter referred to individually as the "Thoroughbred Breeders" or collectively with plaintiffs New Jersey Thoroughbred Horsemen's Association, Inc. and the Standardbred Breeders & Owners Association of New Jersey, Inc. as the "N.J. Horsemen's Associations"), is an organization dedicated to fostering and promoting the breeding and ownership of Thoroughbred horses in the State of New Jersey.

14.     The Thoroughbred Breeders represents its membership in government to secure passage of legislation which supports the New Jersey breeding program.

15.     The Thoroughbred Breeders maintain a close relationship with the New Jersey Racing Commission, the New Jersey Department of Agriculture, the Equine Advisory Board and the New Jersey Horse Council.

16.     The Standardbred Breeders & Owners Association of New Jersey, Inc. (hereinafter referred to individually as the "Standardbred Breeders" or collectively with plaintiffs New Jersey Thoroughbred Horsemen's Association, Inc. and the Thoroughbred Breeders Association of New Jersey as the "N.J. Horsemen's Associations") is an association of horse breeders, drivers, trainers, owners and backstretch personnel, active and interested in the standardbred horse industry in the State of New Jersey.

17.     The Standardbred Breeders' mission is to support and promote the standardbred industry in New Jersey by nurturing and preserving a favorable business climate, while striving to secure closer business and personal relationships among all industry participants throughout the State.

18.     The Standardbred Breeders authorizes stallion, mare, and foal registrations, negotiates with track management, actively oversees and administers a benefits program, and advances legislation favorable to the New Jersey standardbred industry.

19.     The Standardbred Breeders provides its membership with several crucial benefits such as health insurance, third party liability insurance coverage, insurance coverage for damaged or destroyed sulkies, and administers and financially assists a driver/trainer Retirement Program as well as awarding educational scholarships.

20.     The Standardbred Breeders negotiates contracts on behalf of horsemen and women and is presently playing a significant role as it confers with all parties involved in the potential installation of video lottery terminals at New Jersey racetracks.

21.     Raymond J. Lesniak (hereinafter referred to as "Senator Lesniak") serves as a New Jersey State Senator where he represents the 20th Legislative District and serves as the Chairman of the Economic Growth Committee, the Vice-Chairman of the Commerce Committee, and serves on the Judiciary Committee.  He is a co-sponsor of New Jersey Senate Resolution SR12 herein below described, and brings this action in his individual capacity as a citizen of the United States and as a resident of the State of New Jersey.  The Professional and Amateur Sports Protection Act of 1992, codified as 28 *U.S.C.* § 3701 *et seq.*, impedes his ability to serve the residents of the State of New Jersey as a State Senator.

22.     Defendant, Eric H. Holder, Jr. (hereinafter referred to as the "Attorney General") is the Attorney General of the United States and head of the Justice Department of the United States. As such, on information and belief, he is the Chief Law Enforcement Officer of the United States and entrusted to prosecute the civil and criminal laws of the United States.  He is sued in his official capacity.

23.     Defendant, Ralph J. Marra, Jr. (hereinafter referred to as the "U.S. Attorney") is the Acting United States Attorney for the District of New Jersey and head of the United States Attorney Office for the District of New Jersey.  As such, on information and belief, he is the Chief Law Enforcement Officer of the United States for the District of New Jersey and entrusted to prosecute the civil and criminal laws of the State of New Jersey and the United States.  He is sued in his official capacity.

24.     Defendants ABC Sports Organizations 1 to 1000 are fictitious names of an unknown number of professional and amateur sports organizations which are not identified by name under the Professional and Amateur Sports Protection Act, 28 *U.S.C.* §3701, *et seq.*, but

have been delegated the authority to bring civil actions against plaintiffs and others to enjoin activities declared to be unlawful under PASPA.

### FACTS COMMON TO ALL COUNTS

25.    The advent of computer technology and the connectivity of computers gave rise in the last quarter century or more to the ability to communicate and interact among individuals and business entities, among others, by use of a computer network known as the Internet, as described by the United States District Court in *U.S. v. Extreme Associates, Inc.*, 352 *F.Supp. 2d* 578, 580-581 (W.D. Pa. 2005):

a.    The Internet is a decentralized, global medium of communication that links people, institutions, corporations, and governments around the world. It is a giant computer network that interconnects innumerable smaller groups of linked computer networks and individual computers. Although precise estimates are difficult to formulate due to its constant and rapid growth, the Internet is currently believed to connect more than 159 countries and close to 322 million users worldwide.

b.    Because the Internet merely links together numerous individual computers and computer networks, no single entity or group of entities controls all of the material made available on the Internet or otherwise limits the ability of others to access such materials. The range of digital information available to Internet users-which includes text, images, sound and video-is individually created, maintained, controlled, and located on millions of separate individual computers around the world. Each content provider of a web site is responsible for its content.

c.   The Internet presents extremely low entry barriers to anyone who wishes to provide or distribute information or gain access to it.   The Internet provides an affordable means for communicating with, accessing, and posting content to a worldwide audience.

d.   The World Wide Web is the most popular technology to access information on the Internet. Anyone with access to the Internet and proper software can create web pages or home pages which may contain many different types of digital information-text, images, sound, and video. The web comprises millions of separate websites that display content provided by particular persons or organizations.   Any Internet user anywhere in the world with the proper software can view web pages posted by others, read text, view images and video, and listen to sounds posted at these web sites.   Internet users wishing to make content available to others must create the content and publish it on the Internet through an ISP.

e.   The web serves in part as a global, online repository of knowledge, containing information from a diverse array of sources, which is easily accessible to Internet users around the world. Though information on the web is contained on individual computers, each of these computers is connected to the Internet through a web protocol, the hyper text transport protocol, that allows the information on the web to be accessible to web users. The content of some web sites is available to all users while other content may not be accessible without a method of access, such as a login code, chosen by the web site host.

f.   To gain access to the information available on the web, a person generally uses a web "browser"-software such as Netscape Navigator or Internet Explorer-to display, print, and download documents that are formatted in the standard web formatting language. Each page on a web site has an address that allows users to find and retrieve it.

26.     Among other interactions, the advent of such technology gave rise to the ability of individuals and/or business entities to permit participation in games of chance and/or skill via the Internet as a form of entertainment with betting and wagering.

27.     Among other entertainment activities offered to the general public within and without the United States, iMEGA and some of its members utilize computer technology, including the use of computer servers and the Internet, to provide entertainment and wagering via the Internet.

28.     iMEGA members maintain such computer technology and computer servers at locations within and outside the United States.

29.     In all said locations of iMEGA members' computer servers, wagering on games of chance and/or skill via the Internet is a legal activity permitted by law therein.

30.     In all said locations of iMEGA members' computer servers, accepting sums of money by wire transfer, credit and/or debit card transaction, and/or by mail or telephone transfer, is a legal activity permitted by law therein.

31.     Prior to October 28, 1992 and down to the present time in jurisdictions where such activity is presently legal, some of iMEGA's members engaged in the business of maintaining activities known as "Internet Casinos," the same being a computer image generated and supported by computer technology and accessible to anyone wishing to engage in games of chance and/or skill, including but not limited to wagering on professional and amateur sports.

32.     Persons wishing to engage in games of chance and/or skill and betting or wagering on them through iMEGA members' Internet Casinos may originate such an activity while located anywhere in the world, including but not limited to any jurisdiction of the United

States, where gambling in general and Internet gambling specifically may be legal, illegal and/or otherwise regulated, of which the public and/or iMEGA members may or may not know.

33.     On or about October 28, 1992, Congress enacted the "Professional and Amateur Sports Protection Act of 1992," codified as 28 *U.S.C.* §3701, *et seq.* (hereinafter referred to as "PASPA").

34.     PASPA makes it unlawful for "a governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact… a lottery, sweepstakes, or other betting, gambling, or wagering scheme [(hereinafter collectively referred to as "Sports Betting")] based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games" pursuant to 28 *U.S.C.* §3702.

35.     PASPA also makes it unlawful for "a person to sponsor, operate, or promote, pursuant to the law or compact of a governmental entity…a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games" pursuant to 28 *US.C.* §3702.

36.     PASPA permits the commencement of a civil action to enjoin a violation of 28 *U.S.C.* § 3702 "in an appropriate district court of the United States by the Attorney General of the United States, or by a professional sports organization or amateur sports organization whose competitive game is alleged to be the basis of such violation" pursuant to 28 *U.S.C.* §3703.

37.     PASPA does not apply to "a lottery, sweepstakes, or other betting, gambling, or wagering scheme in operation in a State or other governmental entity, to the extent that the scheme was conducted by that State or other governmental entity at any time during the period beginning January 1,1976, and ending August 31, 1990" pursuant to 28 *U.S.C.* §3704(a)(1).

38.     PASPA does not apply to "a lottery, sweepstakes, or other betting, gambling, or wagering scheme in operation in a State or other governmental entity where both…the scheme was authorized by statute as in effect on October 2, 1991" and "a scheme described in section 3702 (other than one based on pari-mutuel animal racing or jai alai games) actually conducted in that State or other governmental entity at any time during the period beginning September 1, 1989, and ending October 2, 1991, pursuant to the law of that State or other governmental entity" pursuant to 28 *U.S.C.* §3702(a)(2).

39.     PASPA does not apply to "a betting or gambling or wagering scheme, other than a lottery described in paragraph (1), conducted exclusively in casinos located in a municipality, but only to the extent that --(A) such scheme or similar scheme was authorized, not later than one year after the effective date of this chapter, to be operated in that municipality" and "(B) any commercial casino gaming scheme was in operation in such municipality throughout the 10-year period ending on such effective date pursuant to a comprehensive system of State regulation authorized by that State's constitution and applicable solely to such municipality" pursuant to 28 *U.S.C.* §3704(a)(3).

40.     PASPA does not apply to pari-mutuel animal racing or jai alai games pursuant to 28 *U.S.C.* §3704(a)(4).

41.     PASPA allows the Attorney General of the United States to file a civil action to enjoin a violation of PASPA pursuant to 28 *U.S.C.* §3703 in a District Court of the United States.

42.     PASPA allows a professional sports organization or amateur sports organization whose competitive game is alleged to be the basis of such violation to file a civil action to enjoin a violation of PASPA pursuant to 28 *U.S.C.* §3703.

43.     Prior to its passing, the United States Department of Justice opposed the passage of PASPA in a letter dated September 24, 1991 to Joseph Biden, Chairman of the Senate Judiciary Committee, based on the fact that (1) Congress has historically left the decision on how to raise revenue to the states, (2) if PASPA were construed as anything more than a mere clarification of existing law, it would put into question issues of federalism, and (3) PASPA was "particularly troubling" in that it permits enforcement of its provisions by sports leagues.

44.     As a result of the exceptions contained in 28 U.S.C. §3704, PASPA permits Sports Betting in Nevada, Delaware, Oregon, and Montana.

45.     PASPA only allowed the State of New Jersey a one (1) year period of time after its passing within which New Jersey could pass legislation to allow Sports Betting pursuant to 28 U.S.C. §3704.

46.     New Jersey was not able to pass legislation within the one (1) year period of time mandated under PASPA.

47.     As a result of the exceptions and the one (1) year provision contained in 28 U.S.C. §3704, PASPA prohibits Sports Betting in the remaining 46 states of the United States, including New Jersey.

48.     PASPA does not define the terms "game", "wagering", "sports", "racing", or "pari-mutuel" in 28 U.S.C. §3701.

49.     PASPA does not indicate whether a state which allowed a particular form of Sports Betting prior to the enactment of PASPA is allowed to authorize a different form of wagering on that same sports event.

50.     Thoroughbred racing within New Jersey is an extensive industry which provides substantial economic and other benefits to the general public and employment opportunities for thousands of people as well as providing substantial revenues to the State of New Jersey.

51.     The New Jersey horse racing industry has lost many fans as interest in horse racing and horse betting has waned in the past several years for economic reasons, which make its survival highly problematic.

52.     More than 142,000 acres of New Jersey's horse farms are disappearing due to the fact that horse breeders can no longer maintain the costs associated with raising and racing horses in New Jersey.

53.     In the face of this severe decline, the competitive disadvantages created by PASPA, which discriminate in favor of the four (4) Sports Betting states, including neighboring Delaware, are likely to be too much for the New Jersey industry to overcome.

54.     Several members of the State Legislature, including Senator Lesniak, have become proponents of lifting the ban on Sports Betting due to the revenues that would be generated from such activities which would attract more visitors to the State and would enable the funding of several State programs.  These proponents believe that PASPA discriminates against New Jersey and deprives the State the same opportunity afforded to Nevada, Delaware, Oregon and Montana to choose to raise revenues from Sports Betting by reason of legislation authorizing Sports Betting.

55.     On February 23, 2009, Senator Lesniak and New Jersey State Senator Jeff Van Drew co-sponsored Resolution SR12, which unanimously passed, that urged the United States Congress to lift the ban on Sports Betting. The Resolution states that New Jersey would benefit significantly from an end to the federal ban as sports wagering would be subject to additional taxes thereby generating more income for the State.  A true copy of the Resolution is annexed as **Exhibit 1** and is incorporated as if more fully set forth at length herein.

56.     This Resolution manifests that the intent of the Legislature is to pass legislation to authorize a form of Sports Betting if PASPA is declared to be unconstitutional.

57.     iMEGA members operate legally in the country or place wherein they are incorporated and where their servers are located.

58.     Members of iMEGA are prohibited from engaging in the business of Internet Sports Betting in the United States due to the prohibitions contained in PASPA.

59.     Members of iMEGA face civil actions to enjoin their participation in the business of engaging in Internet Sports Betting in the United States due to the prohibitions contained in PASPA.

60.     Members of the N.J. Horsemen's Associations are prohibited from engaging in the business of Sports Betting due to the prohibitions contained in PASPA.

61.     Respective horse associations located in Nevada, Delaware, Oregon and Montana are permitted to engage in the business of Sports Betting in the United States due to the provisions contained in PASPA.

62.     Sports Betting and horse gambling share many similarities where cross over betting at local racetracks could occur.

63.     Horse racing tracks such as those in Delaware can be converted to accommodate additional forms of gambling.

64.     New Jersey race tracks will continue to lose customers to Delaware and other states exempt from PASPA that can offer features that accommodate Sports Betting at their race tracks which PASPA precludes in New Jersey.

65.     In an effort to promote more commercial business in thoroughbred breeding for horse racing, the members of the N.J. Horsemen's Associations need to compete with other horse breeding and horse racing facilities located in nearby States like Delaware where Sports Betting is permitted under PASPA.

66.     Some of the members of the N.J. Horsemen's Associations face imminent financial ruin, closure, forfeiture and termination of their employees due to the prohibitions contained in PASPA that, at the same time, permit horse racing tracks in Nevada, Delaware, Oregon, and Montana to participate in Sports Betting.

67.     The entire horse racing industry and horse betting industry in the State of New Jersey faces imminent financial ruin, closure, and termination of its employees due to the prohibitions contained in PASPA that, at the same time, permit horse racing tracks in Nevada, Delaware, Oregon, and Montana to participate in Sports Betting.

68.     Recognizing that the New Jersey horse racing industry, as a critical economic element of the State generating $31 million in taxes and fees annually, has experienced a reduction in revenues due to increased competition from surrounding states,   New Jersey Governor Jon S. Corzine signed an Executive Order on March 5, 2009, creating the Governor's Commission on the Horse Racing Industry whose mission is to identify, assess, and recommend

possible funding solutions for horse racing meets after 2010 and to propose long-term funding solutions that will promote future sustained viability of the horse racing industry in New Jersey.

69.     The illegal sports gambling industry and underground gambling markets represent incursions of illegal activity which are injurious to athletes and the public in both professional and amateur sports.

70.     Illegal sports gambling is not regulated and taxed, with most of those revenues therefore not being collected to the detriment of the public welfare.

71.     The State of New Jersey is denied the ability to collect millions of dollars of potential revenue that would flow from the taxation of legalized Sports Betting in New Jersey due to the prohibitions contained in PASPA.

72.     Nevada retains the unencumbered ability and freedom to collect millions of dollars of revenue each year that flow from the taxation of legalized Sports Betting in that State due to the privileges and accommodations afforded to Nevada under PASPA.

73.     Members of iMEGA and the N.J. Horsemen's Associations are subject to enforcement actions under PASPA by defendant Attorney General, United States Attorneys, professional sports organizations, and amateur sports organizations acting pursuant to their authority as agents thereof, for participating in Sports Betting or sports wagering as aforesaid.

74.     Other persons and/or business entities situated identically to the members of iMEGA and the N.J. Horsemen's Associations are subject to enforcement actions by Defendant Attorney General, United States Attorneys, professional sports organizations, and amateur sports organizations acting pursuant to their authority as agents thereof, for participating in Sports Betting or sports wagering as aforesaid.

## COUNT ONE

### Violation of the Commerce Clause

75.     Plaintiffs iMEGA, the N.J. Horsemen's Associations, and Senator Lesniak restate the Allegations of Paragraphs 1-74 of the Jurisdiction, Venue and Parties allegations and Allegations Common to All Counts of the Complaint and reallege them and incorporate them as if more fully set forth at length herein.

76.     Article I, Section 8, Clause 3 of the United States Constitution states that "The Congress shall have Power... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes".

77.     One of the purposes of the Constitutional Convention of 1787 was to unify the prevailing view among the States that Congress should be vested with the power to regulate matters involving interstate commerce so long as this power was uniformly applied throughout the United States.

78.     Under the Commerce Clause, Congress is required to legislate uniformly amongst the several states.

79.     Some of the said several states of the United States are permitted to have Sports Betting under the provisions of PASPA.

80.     PASPA only gave New Jersey a limited opportunity in the form of a one (1) year time period within which to legalize Sports Betting pursuant to 28 *U.S.C.* §3704.

81.     New Jersey was not able to pass the required legislation within the one (1) year time period mandated under PASPA.

82.     PASPA allows Nevada, Delaware, Oregon, and Montana to engage in Sports Betting.

18

83.     PASPA does not allow the remaining 46 states, including New Jersey, to engage in Sports Betting.

84.     PASPA allows Nevada, Delaware, Oregon, and Montana to enjoy privileges in the form of being allowed to engage in Sports Betting to the exclusion of the remaining 46 states, including New Jersey.

85.     PASPA allows Nevada the ability to collect millions of dollars of state revenue from the taxation of legalized Internet and in-person Sports Betting.

86.     PASPA denies the remaining 46 states, including New Jersey, the ability to collect millions of dollars of state revenue that would flow from the taxation of legalized Sports Betting.

87.     PASPA places Nevada, Delaware, Oregon, and Montana in the advantageous position of being able to collect tax revenues from legal Sports Betting in order to support their respective state budgets and respective state social programs.

88.     PASPA allows Delaware the opportunity to currently develop a Sports Betting/wagering scenario, and Delaware is currently set to introduce a proposal to legalize Sports Betting which, if passed, would institute a statewide sports lottery.

89.     PASPA places the remaining 46 states at a disadvantage by prohibiting them from collecting tax revenues from Sports Betting.

90.     Such additional revenues that would be obtained from the tax surcharges stemming from legal Sports Betting in the remaining 46 states would be utilized for the benefit of the citizens in those states who are currently suffering increased financial burdens due to the faltering economy.

91.     PASPA places the remaining 46 states on an unequal level than Nevada, Delaware, Oregon, and Montana with regard to the ability to collect revenues from Sports Betting.

92.     PASPA allows Nevada, Delaware, Oregon, and Montana to have a cartel on Sports Betting in general in the United States to the detriment of the remaining 46 states.

93.     PASPA allows citizens from Nevada, Delaware, Oregon, and Montana to enjoy the privilege of engaging in multiple forms and platforms for Sports Betting and Sports Betting in general to the detriment of the citizens of the remaining 46 states.

94.     PASPA has an inconsistent effect on iMEGA members, members of the N.J. Horsemen's Associations, and private citizens similarly situated in the 46 remaining states, including New Jersey, who desire to take advantage of multiple forms and platforms for Sports Betting services and Sport Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

95.     The preferential and selective provisions of PASPA relegate the citizens of the remaining 46 states, including New Jersey, to the status of second class citizens who are not able to enjoy the same rights to Sports Betting that is accorded to the citizens of Nevada, Delaware, Oregon, and Montana.

96.     PASPA's interest in regulating Sports Betting is not expressed in any clear or consistent policy among the several states and is inconsistent, arbitrary and capricious.

97.     PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take advantage of iMEGA members' services and/or Internet Sports Betting, or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

98.    iMEGA members, members of the N.J. Horsemen's Associations, and the citizens of the remaining 46 states are being irreparably harmed by being denied their constitutional rights.

99.    Plaintiffs iMEGA, the New Jersey Horsemen's Associations and their members, and Senator Lesniak have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.   Declaring and adjudicating PASPA invalid and void; and

b.   Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.   Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.   For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT TWO

### Violation of the Equal Protection Clause

100.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and Senator Lesniak restate the Allegations of Paragraphs 1-99 of the Jurisdiction, Venue and Parties allegations, Allegations Common to All Counts of the Complaint and Count One and reallege them and incorporate them as if more fully set forth at length herein.

101.    The Fourteenth (14th) Amendment to the United States Constitution states that "no state shall…deny to any person within its jurisdiction the equal protection of the laws."

102.    The United States Constitution guarantees equal application and protection of the laws and equality in treatment of the citizens of the United States.

103.    PASPA allows citizens from Nevada, Delaware, Oregon, and Montana to enjoy the privilege of engaging in multiple forms and platforms for Sports Betting and Sports Betting in general.

104.    PASPA prohibits the citizens from the remaining 46 states, including New Jersey, from enjoying the same privilege of engaging in multiple forms and platforms for Sports Betting, including, but not limited, to casino-based, advance deposit account wagering via the Internet and telephone, and Sports Betting in general.

105.    PASPA has an inconsistent effect on iMEGA members, members of the N.J. Horsemen's Associations, and private citizens similarly situated in the 46 remaining states, including New Jersey, whose residents may desire to take advantage of multiple forms and platforms for Sports Betting, including, but not limited to, casino-based, advance deposit account wagering via the Internet and telephone and Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

106.    PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the forty six (46) remaining states, including New Jersey, who wish to take advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

107.    PASPA, the enforcement of PASPA, and/or regulations adopted thereunder, do, and will in the immediate future unless relief is granted by this court, violate the constitutional

rights of iMEGA and its members, members of the N.J. Horsemen's Associations, and the citizens of the remaining 46 states, to equal protection under the law.

108.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and their members, and Senator Lesniak have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.  Declaring and adjudicating PASPA invalid and void; and

b.  Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.  Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.  For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT THREE

### Void for Vagueness and Overbreadth

109.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and Senator Lesniak restate the Allegations of Paragraphs 1-108 of the Jurisdiction, Venue and Parties allegations, Allegations Common to All Counts of the Complaint and Count One and Count Two and reallege them and incorporate them as if more fully set forth at length herein.

110.    The Fifth (5th) Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law".

111.    The Fourteenth (14th) Amendment to the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law".

112.    Statutes must be drafted in language that is clear enough for the average person to comprehend.

113.    The failure of PASPA to define essential terms may subject certain citizens of the aforesaid remaining forty six (46) states, including New Jersey, to liability and undue restrictions.

114.    PASPA further restricts the legitimate legislative actions of a state which allowed a particular form of sports betting prior to the enactment of PASPA to authorize a different form of wagering on that same sports event subsequent thereto.

115.    PASPA fails to give adequate notice of the actions which may constitute grounds for enforcement by defendants for said actions or omissions by persons situated in the same status across the various states of the United States and foreign countries.

116.    PASPA fails to provide adequate notice of the actions which may result in civil restraints for said actions or omissions to act by persons situated in the same status across the various states of the United States and foreign countries.

117.    PASPA chills the behavior of iMEGA members, members of the N.J. Horsemen's Associations, and the citizens of the remaining 46 States who are not permitted to engage in Sports Betting, in that their behavior, commerce, and expenditures as same is restricted due to the uncertainty created under PASPA.

118.    PASPA's statutory delegation of authority without any clarity as to the identities of the professional and amateur sports organizations which have been delegated the authority to

bring civil actions to enjoin the conduct alleged to be unlawful pursuant to PASPA constitutes a vague and overbroad classification of potential plaintiffs.

119.    PASPA is unconstitutionally overbroad and impermissibly vague.

120.    PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

121.    PASPA, the enforcement of PASPA, and/or regulations adopted thereunder, do, and will in the immediate future unless relief is granted by this court, violate the constitutional rights of iMEGA and its members, members of the N.J. Horsemen's Associations, and the citizens of the remaining 46 States, including New Jersey, due to being overly broad and impermissibly vague.

122.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and their members, and Senator Lesniak have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.    Declaring and adjudicating PASPA invalid and void; and

b.    Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.    Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d. For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT FOUR

### Violation of the Tenth Amendment to the United States Constitution

123. Plaintiffs iMEGA, the N.J. Horsemen's Associations, and Senator Lesniak restate the Allegations of Paragraphs 1-122 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Three and reallege them and incorporate them as if more fully set forth at length herein.

124. The Tenth (10th) Amendment to the United States Constitution states that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

125. The United States Constitution specifically reserves to the individual states any and all rights not delegated to the United States or prohibited thereby to the states.

126. Raising revenue by means of state laws authorizing Sports Betting is a right reserved to the individual states.

127. PASPA violates the Tenth Amendment by unconstitutionally arrogating to the United States such express and implied reserved powers to the individual states to regulate matters affecting its citizens including the raising of revenue by means of a form of authorized Sports Betting which would benefit Plaintiffs iMEGA and the N.J. Horsemen's Associations and their members, as well as the residents of New Jersey in general.

128. PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take

advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

129.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and their members, and Senator Lesniak have been damaged thereby, and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.    Declaring and adjudicating PASPA invalid and void; and

b.    Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.    Permanently restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.    For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT FIVE

### Violation of the Eleventh Amendment

130.    Plaintiffs iMEGA, the N.J. Horsemen's Associations, and Senator Lesniak restate the Allegations of Paragraphs 1-129 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Four and reallege them and incorporate them as if more fully set forth at length herein.

131.    The Eleventh (11th) Amendment to the United States Constitution provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

132.    As noted above PASPA makes it unlawful for "a governmental entity to sponsor, operate, advertise, promote, license, or authorize by law or compact... a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games," pursuant to 28 *US.C.* §3702.

133.    PASPA permits the commencement of a civil action against the State of New Jersey in a Federal Court by any professional sports organization or amateur sports organization whose competitive game is alleged to be the basis of such violation to enjoin a violation of 28 *U.S.C.* §3702, pursuant to 28 *U.S.C.* §3703.

134.    The professional sports associations or amateur sports organizations (defendants ABC Sports Organizations 1-1000) who are granted authority under PASPA to sue the various states, including but not limited to the State of New Jersey, are not identified, defined or limited in any way, jurisdictionally or otherwise.

135.    The State of New Jersey has not waived its sovereign immunity under the Eleventh Amendment with regard to the regulatory scheme set forth in PASPA.

136.    The delegation of authority to sue the various states, including but not limited to the State of New Jersey, under PASPA violates the Eleventh (11th) Amendment of the United States Constitution by purporting to authorize suits against New Jersey by sports associations.

137.    PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take

advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

138.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and their members, and Senator Lesniak have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.    Declaring and adjudicating PASPA invalid and void; and

b.    Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.    Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.    For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT SIX

### Violation of the First Amendment - Senator Lesniak Individually

139.    Plaintiffs iMEGA, the N.J. Horsemen's Associations and Senator Lesniak restate the Allegations of Paragraphs 1-138 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Five and reallege them and incorporate them as if more fully set forth at length herein.

140.     Senator Lesniak has introduced legislation to permit Sports Betting in New Jersey in order to generate income for the State of New Jersey, provide employment opportunities for residents and non-residents, regulate the presently unregulated area of Sports Betting to prevent infiltration by criminal elements, insure the fairness of such wagering and emplace limits on such wagering by compulsive gamblers and minors.

141.     Senator Lesniak as a Legislator of the State of New Jersey is entitled to propose legislation with regard to any subject relating to the health, safety and welfare of the residents and citizens of the State of New Jersey, and of the various states insofar as legislation in New Jersey may benefit all residents and citizens of the various states.

142.     Such entitlement is based on his First Amendment rights, including but not limited to the rights of assembly, association, speech and privacy, but Senator Lesniak is and will be faced with an impermissible chilling of his ability and responsibility as a New Jersey State Senator to introduce, along with co-sponsors, laws which would permit Sports Betting in New Jersey and accomplish salutory ends, because of the requirements and/or restrictions of PASPA.

143.     Senator Lesniak is faced with undue restriction of his First Amendment rights thereby.

144.     Senator Lesniak has been damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.  Declaring and adjudicating PASPA invalid and void; and,

b.  Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

30

c.  Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.  For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT SEVEN

### Violation of Procedural Due Process

145.    Plaintiffs iMEGA and the N.J. Horsemen's Associations restate the Allegations of Paragraphs 1-144 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Six and reallege them and incorporate them as if more fully set forth at length herein.

146.    PASPA fails to provide any means or remedy for plaintiffs iMEGA and the N.J. Horsemen's Associations and their members or persons similarly situated and wishing to take advantage of iMEGA's members' services in order to receive notice and have an opportunity to be heard before any official and/or association action is undertaken against them pursuant to PASPA's provisions.

147.    PASPA fails to provide adequate notice of actions which may result in civil forfeitures or other liability for said actions or omissions to act by governmental agencies and/or persons situated in the same status across the various states of the United States and foreign countries pursuant to PASPA's provisions.

31

148.   PASPA's one (1) year restriction on state activity to validate Sports Betting interferes with and/or prevents plaintiffs iMEGA, the N.J. Horsemen's Associations and their members or governmental entities or persons wishing to avail themselves of iMEGA's members' services, from petitioning their government for relief and/or a change in the law of the state or states wherein they reside or do business or seek to do business.

149.   PASPA's provisions violate the procedural due process provisions of the Fourth (4th), Fifth (5th) and Fourteenth (14th) Amendments to the Federal Constitution.

150.   PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

151.   Plaintiffs iMEGA and the N.J. Horsemen's Associations and their members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.   Declaring and adjudicating PASPA invalid and void; and,

b.   Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.   Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d. For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT EIGHT

### Violation of Substantive Due Process

152.    Plaintiffs iMEGA and the N.J. Horsemen's Associations restate the Allegations of Paragraphs 1-151 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Seven and reallege them and incorporate them as if more fully set forth at length herein.

153.    Internet Sports Betting allows a wagerer to place, receive, or otherwise transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is or may be legal under any applicable Federal or State law in the State or Tribal lands in which the bet is initiated, received or otherwise made.

154.    PASPA restricts the placing, receiving or otherwise transmitting of Sports Betting by any means which involves, at least in part, of the Internet even where a governmental agency has in the past, or intends in the future by legislative act, to permit Sports Betting over the Internet.

155.    Despite the availability of Sports Betting over the Internet, PASPA has an inconsistent effect on plaintiffs, their members, and persons similarly situated and wishing to take advantage of iMEGA members' services based solely on their status as residents of different jurisdictions as aforesaid.

156.    PASPA's inconsistent effects as aforesaid based solely on one's status as residents of different jurisdictions deprives plaintiffs iMEGA, the N.J. Horsemen's Associations and their members and persons similarly situated and wishing to take advantage of iMEGA

members' services the substantive due process protections of the Fourth (4th), Fifth (5th) and Fourteenth (14th) Amendments to the Federal Constitution.

157.   PASPA creates liability on the part of plaintiffs and their members and private citizens similarly situated in the 46 remaining states, including New Jersey, who wish to take advantage of iMEGA members' services and/or Internet Sports Betting or Sports Betting in general based solely on their status as residents of different jurisdictions as aforesaid.

158.   Plaintiffs iMEGA and the N.J. Horsemen's Associations and their members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.  Declaring and adjudicating PASPA invalid and void; and,

b.  Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.  Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.  For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

## COUNT NINE

### Interference with Constitutional Rights of Privacy

159.    Plaintiff iMEGA restates the Allegations of Paragraphs 1-158 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Eight and reallege them and incorporate them as if more fully set forth at length herein.

160.    PASPA impermissibly interferes with the personal privacy and consensual activities of iMEGA's members and those members of the public who wish to avail themselves of iMEGA members' services for Sports Betting.

161.    PASPA's impermissible chilling of iMEGA members' rights and the rights of those members of the public who wish to avail themselves of iMEGA's members' services is overbroad, and more excessive than is needed to serve any asserted governmental interests under PASPA.

162.    There exists less intrusive, easily emplaced and in fact existing methods of preventing any harms as advanced by any governmental interest under PASPA through computer filtering and similar technologies which are already in place in common usage of software on all personal computers and internet services; through use of computerized virtual borders and mapping; and, financial systems which have limits which can be automatically self-imposed or imposed on minors or compulsive gamblers based upon the contractual arrangements and amounts deposited by individuals seeking entertainment by Internet based Sports Betting.

163.    PASPA's restrictions unconstitutionally interfere with, limit and restrict iMEGA members' constitutional rights and/or protected conduct thereby.

35

164.   Plaintiff iMEGA and its members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiffs demand judgment:

a.   Declaring and adjudicating PASPA invalid and void; and,

b.   Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing PASPA, or any provision thereof, until further Order of the court; and,

c.   Permanently restraining the Defendants, professional sports organizations, amateur sports organizations, and each or all of them, jointly, severally or in the alternative, from enforcing any related provision of any other act, statute, law, rule and/or regulation of the United States, including but not limited to PASPA, or any provision thereof, until further Order of the court; and,

d.   For all other equitable relief as the court may deem necessary, just and/or and appropriate under the circumstances of this case.

> WEINER LESNIAK, LLP
> Attorneys for Plaintiffs New Jersey Thoroughbred
> Horsemen's Association, Inc., Thoroughbred
> Breeders Association of New Jersey, the
> Standardbred Breeders & Owners Association of New
> Jersey, Inc. and Raymond J. Lesniak individually and
> as a New Jersey State Senator
>
> By:_____ s/ Richard L. Rudin _____
>                 Richard L. Rudin, Esquire.
>
> ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
> Attorneys   for   Plaintiff   Interactive   Media
> Entertainment & Gaming Association, Inc.
>
> By:_____ s/ Eric Martin Bernstein _____
>                 Eric Martin Bernstein, Esquire

Dated:  March 23, 2009

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

I hereby certify that, to the best of my knowledge, the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor are any other actions or arbitration proceedings contemplated.  Furthermore, I am not presently aware of any other party who should be joined in this action.

WEINER LESNIAK, LLP
Attorneys for Plaintiffs, Interactive Media and
Gaming Association, Inc., New Jersey Thoroughbred
Horsemen's Association, Inc., Thoroughbred
Breeders Association of New Jersey, the
Standardbred Breeders & Owners Association of New
Jersey, Inc., and Raymond J. Lesniak individually and
as a New Jersey State Senator

By:_____ s/ Richard L. Rudin_____
            Richard L. Rudin, Esquire.

ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Attorneys   for   Plaintiff   Interactive   Media
Entertainment & Gaming Association, Inc.

By:_____ s/ Eric Martin Bernstein_____
            Eric Martin Bernstein, Esquire

Dated:  March 23, 2009

## NOTICE OF CLAIM OF UNCONSTITUTIONALITY
## PURSUANT TO L.R.Civ.P 24.1

Please take notice pursuant to L.R.Civ.P 24.1 and 28 *U.S.C.* § 2403(a) that the Plaintiffs

herein question the constitutionality of an act of Congress, to wit: the Professional and Amateur

Sports Protection Act, *28 U.S.C.* §3701, *et seq.,* for the reasons set forth herein; the United States

and/or the Attorney General of the United States and the appropriate United States agency or

agencies are named herein.

WEINER LESNIAK, LLP
Attorneys for Plaintiffs New Jersey Thoroughbred
Horsemen's Association, Inc., Thoroughbred
Breeders Association of New Jersey, the
Standardbred Breeders & Owners Association of New
Jersey, Inc. and Raymond J. Lesniak individually and
as a New Jersey State Senator


By:_____ s/ Richard L. Rudin_____
              Richard L. Rudin, Esquire


ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Attorneys for Plaintiff Interactive Media
Entertainment & Gaming Association, Inc.

By:_____ s/ Eric Martin Bernstein_____
              Eric Martin Bernstein, Esquire


Dated: March 23, 2009

## RESERVATION OF RIGHTS

Plaintiffs reserve the right to assert additional claims for relief with respect to matters that additional discovery and investigation may reveal.

WEINER LESNIAK, LLP
Attorneys for Plaintiffs New Jersey Thoroughbred
Horsemen's Association, Inc., Thoroughbred
Breeders Association of New Jersey, the
Standardbred Breeders & Owners Association of New
Jersey, Inc. and Raymond J. Lesniak individually and
as a New Jersey State Senator


By:_____ s/ Richard L. Rudin_____
              Richard L. Rudin, Esquire

ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Attorneys for Plaintiff Interactive Media
Entertainment & Gaming Association, Inc.


By:_____ s/ Eric Martin Bernstein_____
              Eric Martin Bernstein, Esquire

Dated:  March 23, 2009

# **EXHIBIT 1**

# SENATE RESOLUTION No. 12
# STATE OF NEW JERSEY
## 213th LEGISLATURE

PRE-FILED FOR INTRODUCTION IN THE 2008 SESSION

**Sponsored by:**
**Senator RAYMOND J. LESNIAK**
**District 20 (Union)**
**Senator JEFF VAN DREW**
**District 1 (Cape May, Atlantic and Cumberland)**

**SYNOPSIS**
    Urges the United States Congress to lift the ban on sports wagering.

**CURRENT VERSION OF TEXT**
    Introduced Pending Technical Review by Legislative Counsel

**A SENATE RESOLUTION** urging the United States Congress to lift the federal ban on sports wagering.

**WHEREAS,** Since January 1, 1993, the federal "Professional and Amateur Sports Protection Act," 28 U.S.C.ss.3701 et seq., has prohibited states and local governments from authorizing sports wagering; and

**WHEREAS,** Under the terms of the federal law, Nevada is the only state where sports wagering is legally permitted, and this activity has resulted in great direct and indirect revenues to that state's economy; and

**WHEREAS,** According to the Nevada Gaming Control Board, about $94.5 million was legally wagered in Nevada on the 2006 Super Bowl game only, and the 2006 Super Bowl weekend generated about $102.4 million in non-gaming economic impact as the game attracted 285,000 visitors to Las Vegas; and

**WHEREAS,** It is estimated that Nevada's legal sports wagering represents less than 1% of all sports wagering nationwide; and

**WHEREAS,** In fact, according to the National Gambling Impact Study Commission, illegal sports wagering amounts to about $380 billion each year; and

**WHEREAS,** The federal sports wagering ban is not effective in curbing illegal sport gambling, so that lifting the ban on sports wagering would allow state gaming enforcement agencies to properly regulate and police this activity; and

**WHEREAS,** The State of New Jersey would benefit significantly from an end to the federal ban, as sports wagering at Atlantic City casinos would be subject to the existing 8% casino gross revenue tax and the 1.25% investment alternative tax, thereby generating more income for the State; and

**WHEREAS,** Furthermore, the legalization of sports wagering would enhance Atlantic City as a gaming and tourism destination; now, therefore,

    **BE IT RESOLVED** *by the Senate of the State of New Jersey:*

1. This House respectfully urges the United States Congress to remove the federal ban on sports wagering.

2. Duly authenticated copies of this resolution, signed by the Senate President and attested by the Secretary thereof shall be transmitted to the majority and minority leaders of the United States Congress, and to each member of Congress elected from New Jersey.

## STATEMENT

This Senate resolution urges the United States Congress to lift the federal ban on sports wagering.

Sports wagering is currently illegal under the "Professional and Amateur Sports Protection Act," 28 U.S.C.ss.3701 et seq., although when the act took effect in 1993, it grandfathered the states of Nevada, Oregon, Delaware, and Montana, and gave New Jersey one year to enact a law to authorize sports wagering. However, Nevada is currently the only state where sports wagering is legal, regulated, policed, and taxed.

Although sports wagering is illegal under federal law, the prohibition has failed to curb that activity. It is estimated that Americans wager about $380 billion each year on sports alone, and the legal wagers on sporting events placed in Nevada amount to only 1% of that total. By legalizing sports wagering, state gaming enforcement agencies could finally properly regulate and police this illegal activity, and states could also tax it and thereby generate needed tax dollars to alleviate states budget gaps. The legalization of sports wagering would enhance Atlantic City as a gaming and tourism destination.