TONY WEST
Assistant Attorney General
PAUL J. FISHMAN
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director, Federal Programs Branch
PETER D. LEARY
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
Tel: (202) 514-3313
Fax: (202) 616-8470
E-mail: peter.leary@usdoj.gov

*UNITED STATES DISTRICT COURT*
*DISTRICT OF NEW JERSEY*

| | |
|---|---|
| INTERACTIVE MEDIA ENTERTAINMENT & GAMING ASSOCIATION, INC., *ET AL.*,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC H. HOLDER, JR., *ET AL.*,<br><br>Defendants. | HON. GARRETT E. BROWN, JR.<br><br>*Civil Action No.* 09-1301 (GEB-TJB) |

REPLY IN SUPPORT OF
FEDERAL DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION. ................................................................................... 1

I.    Plaintiffs Lack Standing To Maintain This Case. ............................. 1

    A.    The Senators Lack Standing. .................................................... 1

    B.    iMEGA and the N.J. Horsemen's Associations Lack Standing. .......... 3

    C.    No Plaintiff Has Standing To Raise Claims on New Jersey's Behalf. .............................................................................. 4

II.    Plaintiffs Fail To State a Claim. ...................................................... 5

    A.    PASPA Does Not Violate the Commerce Clause. ............................ 5

    B.    PASPA Does Not Violate the First Amendment. ................................. 8

    C.    PASPA Does Not Violate the Tenth Amendment. ............................. 12

    D.    PASPA Does Not Violate the Eleventh Amendment. ........................ 14

    E.    Plaintiffs Have Abandoned Their Equal Protection, Due Process, and "Right to Privacy" Claims. ........................................... 14

CONCLUSION. .................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**                                                                                **PAGE(S)**

Alaska Legislative Council v. Babbitt,
      181 F.3d 1333 (D.C. Cir 1999). ................................................................ 2

Brennan v. Palmieri,
      No. 07-4364, 2008 WL. 2355203 (D. N.J. June 4, 2008)............................ 15

Central Hudson Gas & Electric Corp. v. Public Serv. Commission of N.Y.,
      447 U.S. 557 (1980)................................................................................... 9

Chapman v. U.S.,
      500 U.S. 453 (1991)................................................................................. 11

Cheffer v. Reno,
      55 F.3d 1517 (11th Cir. 1995). ................................................................ 12

Coleman v. Miller,
      307 U.S. 433 (1939)................................................................................... 2

Currin v. Wallace,
      306 U.S. 1 (1939)...................................................................................... 5

Fernandez v. Wiener,
      326 U.S. 340 (1945)................................................................................. 12

Flagler v. U.S. Attorney for Dist. of N.J.,
      No. 06-3699  2007 WL. 2814657 (D. N.J. Sept. 25, 2007). ........................ 3

In re Forsythe,
      91 N.J. 141 (1982). .................................................................................. 4

Garcia v. San Antonio Metropolitan Transit Authority,
      469 U.S. 528 (1985)................................................................................... 6

Gonzales v. Raich,
    545 U.S. 1 (2005)............................................................................ 5

Greater New Orleans Broadcasting Association v. U.S.,
    527 U.S. 173 (1999)................................................................ 6, 9, 10

Gregory v. Ashcroft,
    501 U.S. 452 (1991)............................................................... 2, 12, 13

Hodel v. Indiana,
    452 U.S. 314 (1981)................................................................. 5, 7, 13

Hodel v. Virginia Surface Mining & Reclamation Association,
    452 U.S. 264 (1981)............................................................................ 14

Jarecki v. G. D. Searle & Co.,
    367 U.S. 303 (1961)............................................................................ 11

Karcher v. May,
    484 U.S. 72 (1987)............................................................................. 4

Kentucky Division, Horsemen's Benev. Association, Inc. v. Turfway Park,
    20 F.3d 1406 (6th Cir. 1994). ........................................................ 7

Love v. Johnson,
    No. 07-1045, 2010 WL. 2178951 (D. N.J. May 27, 2010).......................... 15

May v. Cooperman,
    578 F. Supp. 1308 (D. N.J. 1984). ................................................ 4

New York v. U.S.,
    505 U.S. 144 (1992)...................................................................... 13

OFC Commissioner Baseball v. Markell,
    579 F.3d 293 (3d Cir. 2009). ............................................. *passim*

Pennsylvania v. New Jersey,
    426 U.S. 660 (1976)...................................................................... 2

Planned Parenthood v. Farmer,
    220 F.3d 127 (3d Cir. 2000). ........................................................................ 4

Raines v. Byrd,
    521 U.S. 811 (1997)........................................................................................ 3

Reynolds v. Wagner,
    128 F.3d 166 (3d Cir. 1997). ...................................................................... 14

Ry. Railway Labor Executives' Association v. Gibbons,
    455 U.S. 457 (1982)........................................................................................ 5

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998).......................................................................................... 3

U.S. v. Aldrich,
    862 F.2d 875 (9th Cir. 1988). .................................................................... 12

U.S. v. Edge Broadcasting Co.,
    509 U.S. 418 (1993)........................................................................................ 7

U.S. v. Kukafka,
    478 F.3d 531 (3d Cir. 2007). ................................................................. 6, 12

U.S. v. Lopez,
    514 U.S. 549 (1995)........................................................................................ 5

U.S. v. Owens,
    996 F.2d 59 (5th Cir. 1993). ...................................................................... 12

U.S. v. Rumely,
    345 U.S. 41 (1953).......................................................................................... 11

Van Ness v. Borough of Deal,
    352 A.2d 599 (N.J. Super. Ch. 1975), *reversed on other*
    *grounds by* Van Ness v. Borough of Deal, 393 A.2d 571
    (N.J. Oct 16, 1978)......................................................................................... 4

-iv-

<u>Ex Parte Young</u>,
> 209 U.S. 123 (1908)................................................................ 14

## <u>STATUTES</u>

18 U.S.C. § 1304............................................................................... 10

25  U.S.C. 2703(4)............................................................................ 1

25 U.S.C. 2703(5)............................................................................. 1

28 U.S.C. § 3701(2)........................................................................... 1

28 U.S.C. § 3702............................................................................... 13

28 U.S.C. § 3704............................................................................... 13

31 U.S.C. §§ 5361-5367..................................................................... 7

## <u>CONSTITUTIONAL PROVISIONS</u>

Supremacy Clause, U.S. Const., Art. VI, cl. 2....................................... 2

## <u>FEDERAL RULES OF CIVIL PROCEDURE</u>

Rule 12(b)(1) ................................................................................. 3

## <u>LEGISLATIVE MATERIAL</u>

*Prohibiting State-Sponsored Sports Gambling: Hearing on S.474*
> *Before the S. Judiciary Comm.*, 102nd Cong. 1, 11 (1991)........................ 6, 7

## <u>MISCELLANEOUS</u>

Delaware Park website http://www.delawarepark.com/race_sportsbetting.php....... 9

## INTRODUCTION

Eighteen years ago, pursuant to its Commerce Clause powers, Congress enacted the Professional and Amateur Sports Protection Act of 1992 (PASPA), to "limit the spread of state-sponsored sports gambling and maintain the integrity of sports." OFC Comm'r Baseball v. Markell, 579 F.3d 293, 303 (3d Cir. 2009). In so doing, Congress permissibly "altered the usual constitutional balance with respect to sports wagering[.]" Id. (citation omitted). Plaintiffs lack standing to challenge PASPA, and they have offered no reason to doubt the high presumption of legitimacy that attaches to an Act of Congress. This case should be dismissed.

## I.    Plaintiffs Lack Standing To Maintain This Case

### A.    The Senators Lack Standing

Senators Lesniak and Sweeney allege three injuries which they assert can be traced to PASPA and would be redressed by its abolition: (1) an inability to advertise or promote sports betting; (2) an inability to authorize sports betting; and (3) the threat of injunction. Each "injury" assumes that the Senators individually, or the Senate as a whole, is a "governmental entity" under PASPA. They are not.

The Act, 28 U.S.C. § 3701(2), defines "governmental entities" as:

> a State, a political subdivision of a State, or an entity or organization, including an entity or organization described in section 4(5) of the Indian Gaming Regulatory Act (25 U.S.C. 2703(5)), that has governmental authority within the territorial boundaries of the United States, including on lands described in section 4(4) of such Act (25

U.S.C. 2703(4))[.]

Setting aside the Senators' contention that they can raise certain claims on the State's behalf, a point Defendants dispute, the Senators and Senate are not the actual State of New Jersey.[1]  Nor are they "political subdivisions" of the State, a term that encompasses government agencies, counties and municipalities, see Exhibit A ("New Jersey Political Subdivisions"), or Indian tribes.  The Senators lack standing to raise any claim as "governmental entities" aggrieved by PASPA.[2]

Furthermore, the threat of a civil injunction against the Senators is entirely speculative.  No attempt has been made to secure an injunction against them for their past actions, which have included sponsoring legislation related to sports betting, and their allegation that "pre-enactment legislative action" may result in a

---

[1] Again, even if New Jersey were a party, "[n]o State can be heard to complain about damage inflicted by its own hand."  Pennsylvania v. New Jersey, 426 U.S. 660, 664 (1976).  Plaintiffs argue that "self-created injury obviously means that a State has taken an affirmative act that causes its own injury," but the Court did not limit its holding to the passage of legislation.  It noted that "[t]he injuries to the [states'] fiscs were self-inflicted, resulting from *decisions* by their respective state legislatures."  Id. (emphasis added).  Just so here.  Any injury to be found is the result of the New Jersey legislature's decision not to act, despite the opportunity it had to do so.

[2] In particular, this shows that PASPA does not injure the Senators by preventing them from "authorizing" sports betting.  PASPA may prohibit the New Jersey Lottery Commission (a political subdivision) from authorizing sport betting; it does not prohibit the Senate from passing legislation.  While a state law in conflict with PASPA might be preempted by the Supremacy Clause, U.S. Const., Art. VI, cl. 2, "that type of injury does not entitle individual legislators to seek a judicial remedy."  Alaska Legislative Council v. Babbitt, 181 F.3d 1333, 1338 (D.C. Cir 1999).  Such preemption would not negate the Senators' votes, see Coleman v. Miller, 307 U.S. 433 (1939), but reflects that the "Federal Government holds a decided advantage in [the] delicate balance" between federal and state power.  Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).

-2-

civil lawsuit "such as happened in Delaware" is simply wrong.[3]

## B.    iMEGA and the N.J. Horsemen's Associations Lack Standing

iMEGA and the N.J. Horsemen's Associations allege: (1) an inability to advertise or promote sports betting; (2) economic injuries from not being able to sponsor or operate betting; and (3) the threat of injunction.  As Defendants have argued, and a Court in this District has previously found, none of these "injuries" are fairly traced to the Act, nor would judgment in plaintiffs' favor redress them, as there is no New Jersey state law permitting sports betting.  See Flagler v. U.S. Attorney for Dist. of N.J., No. 06-3699 (JAG), 2007 WL 2814657, *3 (D. N.J. Sept. 25, 2007).  And again, the threat of an injunction is too speculative to satisfy plaintiffs' Rule 12(b)(1) burden, particularly given the "especially rigorous" standing inquiry in a case like this.  Raines v. Byrd, 521 U.S. 811, 819-20 (1997).[4]

For these, and all of the reasons previously set forth, no plaintiff in this case can establish the necessary standing to challenge PASPA.

---

[3] The sports leagues did not file a suit against the Governor of Delaware and the Director of the Delaware State Lottery Office until July 24, 2009 – well after the sports betting legislation at issue had been signed into law (May 14, 2009), and the State had published proposed regulations to implement it (June 30, 2009).  See Markell, 579 F.3d at 295-96.

[4] A Rule 12(b)(1) motion does not just examine "procedural defects," as plaintiff contends.  Pls. Opp. at 7.  "Much more than legal niceties are at stake here.  The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers [.]"  Steel Co. v. Citizens for a Better Envt., 523 U.S. 83, 101 (1998).

## C.    No Plaintiff Has Standing To Raise Claims on New Jersey's Behalf

Plaintiffs' contention that the Senate is entitled to represent the State in this case because the legislature has been allowed to participate in litigation in the past ignores fundamental differences between the cases they cite to support their argument and the matter at hand.  The two main cases plaintiffs cite[5] involve (1) the entire state legislature (2) defending a challenge (3) to a state law enacted by that legislature (4) on behalf of the Legislative Branch (5) after the Governor and Attorney General had refused to defend the state law.  This is a vastly different proposition than the theory plaintiffs advance: that (1) a single house of the state legislature (2) can mount an attack (3) on a federal statute (4) on behalf of the State (5) when the Governor and Attorney General have declined to participate.[6]

No plaintiff, not even the Senate, may advance a claim on the State's behalf.

_____

[5] Karcher v. May, 484 U.S. 72 (1987); Planned Parenthood v. Farmer, 220 F.3d 127 (3d Cir. 2000).  Plaintiffs also reference In re Forsythe, 91 N.J. 141 (1982), but that case is even less availing than Karcher and Farmer.  In re Forsythe involved a challenge to a state law by members of Congress.  Upon petition, the N.J. Senate and N.J. Assembly were granted leave to participate in the law's defense alongside the Attorney General.  As the Supreme Court explained, "[t]he New Jersey Supreme Court has granted applications of the Speaker of the General Assembly and the President of the Senate [jointly] to intervene as parties-respondent *on behalf of the legislature* in *defense* of a [state] legislative enactment." Karcher, 484 U.S. at 82 (emphasis added).

[6] Plaintiffs fail to refute that the State Constitution vests the exclusive right to "control all litigation . . . [in] which [the State's] rights and interests are involved" in the Attorney General, see N.J.S.A. 52:17A-4, or the holdings that "the Attorney General must determine whether the State is interested in any situation."  Van Ness v. Borough of Deal, 352 A.2d 599, 605 (N.J. Super. Ch. 1975), *reversed on other grounds by* Van Ness v. Borough of Deal, 393 A.2d 571 (N.J. Oct 16, 1978); *see also* May v. Cooperman, 578 F. Supp. 1308 (D. N.J. 1984).

-4-

## II.     Plaintiffs Fail To State a Claim

### A.     PASPA Does Not Violate the Commerce Clause

"Congress' commerce authority includes the power to regulate . . . those activities that substantially affect interstate commerce[.]"  U.S. v. Lopez, 514 U.S. 549, 558-59 (1995) (citation omitted).  "Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained."  Gonzales v. Raich, 545 U.S. 1, 25 (2005) (quotation omitted).  Plaintiffs do not dispute that sports betting substantially affects interstate commerce, nor could they.  Therefore, PASPA must be upheld as a valid exercise of commerce power.

Although plaintiffs indicate a willingness to concede that "in some limited cases" there is "a reduced requirement" for uniformity under the Commerce Clause, more than 70 years ago the Supreme Court held that "[t]here is *no* requirement of uniformity in connection with the commerce power[.]"  Currin v. Wallace, 306 U.S. 1, 14 (1939) (emphasis added).  The Court has repeatedly affirmed this principle.  See, e.g., Ry. Labor Executives' Ass'n v. Gibbons, 455 U.S. 457, 468-469 (1982) ("uniformity in the applicability of legislation is not required by the Commerce Clause"); Hodel v. Indiana, 452 U.S. 314, 332 (1981) ("Nor does the Commerce Clause impose requirements of geographic uniformity") (citation omitted).  Any contention by plaintiffs that Congress' broad commerce

power is limited by a geographic uniformity requirement is patently incorrect.[7]

Rather than reconcile themselves to the Commerce Clause's clear lack of a uniformity requirement, plaintiffs embark on a lengthy misapplication of <u>Greater New Orleans Broadcasting Association v. U.S.</u>, 527 U.S. 173 (1999) to this case. Plaintiffs' primary contention appears to be that because the Court there concluded that the Federal government has, over time, exhibited a "decidedly equivocal" policy towards state-run lotteries and casinos, Congress' national policy with respect to sports betting must be similarly ambivalent, and therefore PASPA necessarily violates the Commerce Clause.  However, plaintiffs never once address that the national policy devised by Congress was to limit the *spread* of sports betting so as to maintain the integrity of sports and protect "the purity of the experience" for youth,[8] and Congress has not deviated from that policy.

Through PASPA, Congress devised "a national policy with due regard for

---

[7] Plaintiffs also assert that there is a "uniformity requirement of the Tenth Amendment" which constrains Congress' power under the Commerce Clause and which PASPA violates.  No such limitation appears in the text of the Tenth Amendment, and plaintiffs fail to cite a single case to support its existence.  As explained in section II.C., the Tenth Amendment does not limit the valid exercise of power delegated to Congress by the Commerce Clause, <u>see</u> <u>U.S. v. Kukafka</u>, 478 F.3d 531, 537 (3d Cir. 2007), and there is no "state sovereignty" exception to Congress' Commerce Clause power, <u>see</u> <u>Garcia v. San Antonio Metro. Transit Auth.</u>, 469 U.S. 528 (1985).

[8] *Prohibiting State-Sponsored Sports Gambling: Hearing on S.474 Before the S. Judiciary Comm.*, 102nd Cong. 11 (1991) (statement of Sen. Bill Bradley).  It is also reasonable for Congress to have concluded that Pop Warner Football and NCAA basketball instill values in youth that horse and dog racing do not.  <u>Cf.</u> <u>New Orleans Broadcasting</u>, 527 U.S. at 192 ("parimutuel betting on horse and dog races" are "arguably distinguishable" forms of gambling.)

the varying and fluctuating interests of different regions."  Hodel, 452 U.S. at 332.

To regulate sports betting, an activity with an uncontested effect on interstate

commerce, Congress enacted a national policy that halted its spread.  Arresting the

spread of sports betting, rather than banning it altogether (as Congress could have

done),[9] gave due regard to the varying interests of different States.[10]  Since PASPA

became law, its total ban on the spread of sports betting has not eroded, nor have

its few exceptions been expanded.  Regardless of any change in Congressional

policy towards state-run lotteries or casinos over time, there has been none

towards sports betting.  Plaintiffs do not and cannot point to a single example of

"equivocation" in this area.[11]  Congress adopted a particularly "coherent" national

policy towards sports betting when it enacted PASPA; the policy has not changed.

---

[9] "[G]ambling . . . implicates no constitutionally protected right; rather, it falls into a category of 'vice' activity that could be, and frequently has been, banned altogether."  U.S. v. Edge Broadcasting Co., 509 U.S. 418, 426 (1993); see also Kentucky Div., Horsemen's Benev. Ass'n, Inc. v. Turfway Park, 20 F.3d 1406, 1412 (6th Cir. 1994) (same).

[10] "The intent of the legislation is not to interfere with existing laws, operations or revenue streams.  Therefore, I agreed to provide an exemption from the legislation for those States which already have laws permitting them to conduct State gambling . . . .  What my legislation will do is keep sports gambling from spreading.  One State conducting sports gambling may not change the image of sports, but many will."  *Prohibiting State-Sponsored Sports Gambling: Hearing on S.474 Before the S. Judiciary Comm.*, 102nd Cong. 1 (1991) (statement of Sen. Dennis DeConcini).

[11] Not only has Congress carved out no new exceptions to PASPA, but the only federal gambling legislation enacted since PASPA, the Unlawful Internet Gambling Enforcement Act (31 U.S.C. §§ 5361-5367), does not authorize any sports wagering that is prohibited by PASPA.

**B.     PASPA Does Not Violate the First Amendment**

Plaintiffs' opposition raises two main First Amendment objections.  First, plaintiffs argue that PASPA violates their right to engage in commercial speech. Second, they contend that PASPA's prohibition on the "promotion" of sports betting is void for vagueness.  Neither allegation survives examination.

As an initial matter, although plaintiffs' opposition briefs claim that PASPA infringes the First Amendment rights of all plaintiffs, their Complaints only allege First Amendment violations on the Senators' behalf.  And nowhere in either Complaint, with respect to any plaintiff, is "commercial speech" ever mentioned. Count Six in the original complaint, the single claim therein that alleges a First Amendment violation, is entitled "Violation of the First Amendment – *Senator Lesniak Individually*," and paragraph 144 of that Count alleges that "*Senator Lesniak* has been damaged."  This is in clear contrast to other Counts, like Count One, which are brought on behalf of *all* original plaintiffs and which allege harm to *all* of them.  Moreover, it is obvious from reading both Senators' First Amendment claims that the only First Amendment violation alleged in this case is the purported inhibition on the Senators' ability to "introduce legislation."  "[T]he legal theories set forth in [a] brief are helpful only to the extent that they find support in the allegations set forth in the complaint.  It is axiomatic that the

-8-

complaint may not be amended by the briefs in opposition to a motion to dismiss."
Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)
(quotation omitted).   For this reason alone, the Court should dismiss the
commercial speech claims raised for the first time in plaintiffs' opposition briefs.

Even if the Court were to credit plaintiffs' late-arriving, unpled commercial
speech claims, these allegations lack merit.  Plaintiffs incorrectly claim that
PASPA contains an "absolute" ban on advertising, but as the Supreme Court has
recognized, the Act "proscribes *most* sports betting and advertising thereof," New
Orleans Broadcasting, 527 U.S. at 179 (emphasis added), not *all* such advertising.
Specifically, the Act does not prohibit the advertising of *legal* sports betting, such
as ads for certain parlay bets on professional football in Delaware.  See, e.g.,
Delaware Park website http://www.delawarepark.com/race_sportsbetting.php (last
visited October 12, 2010).  PASPA bans the advertising of illegal sports betting.

Therein lies one of the fatal flaws in plaintiffs' commercial speech analysis.
Courts assess commercial speech restrictions based on the test in Central Hudson
Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557 (1980), which
asks (1) whether the speech concerns lawful activity and is not misleading and (2)
whether the asserted governmental interest is substantial; and, if so, (3) whether
the regulation directly advances the governmental interest and (4) whether it is

more extensive than is necessary to serve that interest.  Id. at 566.  PASPA passes this test.  The speech at issue concerns unlawful activity: sports betting in New Jersey.  The governmental interest in preventing the ills associated with gambling, including sports betting, is significant and has been recognized by the Supreme Court.  See New Orleans Broadcasting, 527 U.S. at 186.  Banning the advertising of illegal sports betting directly advances that governmental interest, and limiting the ban to illegal sports betting, while permitting commercial speech about legal sports betting, proves the regulation is not more extensive than necessary.

The law considered in New Orleans Broadcasting is readily distinguishable. First, 18 U.S.C. § 1304 is a criminal statute directed at speech – its purpose is to prohibit broadcasters from advertising about privately-operated commercial casino gambling.  By contrast, PASPA is a civil law directed at conduct, and its "central purposes [are] to limit the spread of state-sponsored sports gambling and maintain the integrity of sports."  Markell, 579 F.3d at 303.  Second, since enacting § 1304, Congress passed a number of laws that explicitly limited its coverage, such as the Indian Gaming Regulatory Act and the Charity Games Advertising Clarification Act.  This led the Court to conclude "[t]he operation of § 1304 and its attendant regulatory regime is so pierced by exemptions and inconsistencies" that the law violated the First Amendment.  By contrast, in the 18 years since PASPA was

-10-

enacted, Congress has passed no laws that curtail its coverage – no exemptions have been carved out for sports betting on tribal lands, for charity games, or for any other purpose.  Simply put, PASPA infringes no commercial speech.

Finally, the claim that PASPA's restriction on the "promotion" of sports betting is void for vagueness because plaintiffs do not know what conduct it prohibits ignores the "maxim *noscitur a sociis*, that a word is known by the company it keeps," which "is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."  Jarecki v. G. D. Searle & Co., 367 U.S. 303, 307 (1961).  Given the Third Circuit's recognition that "PASPA unmistakably prohibits state-sponsored gambling," Markell, 579 F.3d at 303, and Congress' barring the "promotion" of such gambling alongside its sponsorship, operation and licensing, it is reasonable to conclude that PASPA simply prohibits the organization of sports betting as a business undertaking, with certain clear exceptions.  The Supreme Court has held that "it is our duty in the interpretation of federal statutes to reach a conclusion which will avoid serious doubt of their constitutionality," U.S. v. Rumely, 345 U.S. 41, 45 (1953); accordingly, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  Chapman v. U.S., 500 U.S. 453, 464 (1991) (citation omitted).  PASPA is not void for vagueness.

### C.    PASPA Does Not Violate the Tenth Amendment

Contrary to plaintiffs' unsupported denial, it is well established that Congress' valid exercise of authority delegated to it under the Constitution, like commerce power, is no Tenth Amendment violation.  See Fernandez v. Wiener, 326 U.S. 340, 362 (1945) ("The Tenth Amendment does not operate as a limitation upon the powers, express or implied, delegated to the national government."); see also Kukafka, 478 F.3d at 537 (holding there can be no violation of the Tenth Amendment when Congress properly exercises its power under the Commerce Clause); Cheffer v. Reno, 55 F.3d 1517 (11th Cir. 1995) (same);  U.S. v. Owens, 996 F.2d 59 (5th Cir. 1993) (same); U.S. v. Aldrich, 862 F.2d 875 (9th Cir. 1988) (same).  The key question is whether the enactment of the underlying law is a valid exercise of Congress' commerce power.  As shown by Defendants, there is no doubt on that point here; therefore, PASPA cannot violate the Tenth Amendment.

In addition to a generalized "Tenth Amendment" objection, plaintiffs raise two specific complaints.  First, they argue PASPA impermissibly interferes with gambling, the regulation of which they contend has been traditionally reserved to the States.  Second, they argue that Congress acted to "compel" the State by incorporating a one-year window of opportunity for the state legislature to grandfather New Jersey into PASPA.

-12-

Plaintiffs' first point is easily refuted.  Even if one assumes that gambling is an area of traditional State regulation, "[a]s long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States. Congress may legislate in areas traditionally regulated by the States." Gregory, 501 U.S. at 460.  If Congress wishes to preempt a traditional State power and "intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." Id. at 460-61 (quotation omitted).  Evaluating a near-identical state sovereignty challenge to the Act last year, the Third Circuit held that Congress had satisfied this burden.  "PASPA unmistakably prohibits state-sponsored gambling, 28 U.S.C. § 3702, subject to certain exceptions, 28 U.S.C. § 3704.  Through PASPA, Congress has 'altered the usual constitutional balance' with respect to sports wagering[.]" Markell, 579 F.3d at 303.

Plaintiffs' second point is equally without merit.  The Act permitted—but did not require—New Jersey to grandfather itself into PASPA; 28 U.S.C. § 3704(a)(3) was an opportunity, not a compulsion.  The State could, and did, choose to ignore it.[12]  Enacting PASPA was no Tenth Amendment violation.

---

[12] Plaintiffs' reliance on New York v. U.S., 505 U.S. 144 (1992) is misplaced, among other reasons, because PASPA did not establish a "federal regulatory program."  Congress may not "commandee[r] the legislative processes of the States by directly compelling them to enact

### D.   PASPA Does Not Violate the Eleventh Amendment

Defendants' motion to dismiss explained that a suit brought by an injured sports league would not violate Eleventh Amendment immunity, pursuant to the well-known exception in Ex Parte Young, 209 U.S. 123 (1908).  Plaintiffs' response fails to address the Ex Parte Young doctrine at all, and instead makes the curious accusation that the Government has questioned the "vitality" of the Eleventh Amendment.  The Government has done no such thing.  Defendants merely explained why a suit against state officials in their official capacities, where plaintiffs seek prospective, injunctive relief for ongoing violations of federal law, is not unconstitutional.  No more obvious proof of this point exists than the Third Circuit last year ordering the entry of just such an injunction sought by various sports leagues against State officers of Delaware, over those officials' "state sovereignty" objections.  See Markell, 579 F.3d at 304.  In any event, this defense (which plaintiffs lack standing to raise) is not ripe—no suit has been filed.

### E.   Plaintiffs Have Abandoned Their Equal Protection, Due Process, and "Right to Privacy" Claims

Defendants' motion to dismiss argued that PASPA does not violate either the equal protection or the due process clauses, nor does it interfere with any

---

and enforce a federal regulatory program," Hodel v. Virginia Surface Mining & Reclamation Ass'n., 452 U.S. 264, 288 (1981), but Congress did nothing of the sort here.

constitutional right to privacy.  Plaintiffs' opposition fails to respond to these

arguments.  Therefore, not only should these claims be dismissed for the reasons

previously set forth by Defendants, but they have been waived.  See, e.g.,

Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) (holding that a single

conclusory statement in a brief without more results in waiver of the argument);

Love v. Johnson, No. 07-1045, 2010 WL 2178951, at *7 (D. N.J. May 27, 2010)

("Failure to respond constitutes abandonment or waiver of [a] claim[.]"); Brennan

v. Palmieri, No. 07-4364, 2008 WL 2355203, at *5 n.4 (D. N.J. June 4, 2008)

(where party fails to respond, "it appears that Plaintiff does not oppose dismissal

of this count").

## CONCLUSION

For the reasons set forth above, Federal Defendants' Motion to Dismiss

should be granted, and this action should be dismissed with prejudice.

Dated: October 18, 2010                    Respectfully submitted,

TONY WEST                                  /s/ Peter D. Leary
Assistant Attorney General                 PETER D. LEARY
                                           Trial Attorney, Federal Programs Branch
PAUL J. FISHMAN                            U.S. Department of Justice, Civil Division
United States Attorney                     Tel: (202) 514-3313
                                           Fax: (202) 616-8470
VINCENT M. GARVEY                          E-mail: peter.leary@usdoj.gov
Deputy Branch Director,
Federal Programs Branch                    Counsel for Federal Defendants

-15-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 18, 2010, a true and correct copy of the

foregoing Reply in Support of Federal Defendants' Motion to Dismiss was served

electronically upon the following parties or counsel:

Richard L. Rudin
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, New Jersey 07054-0438
(973) 403-1100    (973) 403-0010 (fax)
rrudin@weinerlesniak.com

*Attorney for Plaintiffs the New Jersey Horsemen's Associations, and Senator*
*Raymond J. Lesniak*

Eric M. Bernstein
Eric M. Bernstein & Associates, L.L.C.
Two North Road
P.O. Box 4922
Warren, New Jersey 07059
(732) 805-3360    (732) 805-3346 (fax)
embernstein@embalaw.com

*Attorney for Plaintiff Interactive Media Entertainment & Gaming Association, Inc.*

Leon J. Sokol
Sokol, Behot & Fiorenzo
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300    (201) 488-6541 (fax)
LJSokol@SBFLawfirm.com

*Attorney for Plaintiff-Intevenor Senator Stephen M. Sweeney*

/s/ Peter D. Leary
PETER D. LEARY