TONY WEST
Assistant Attorney General
PAUL J. FISHMAN
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director, Federal Programs Branch
PETER D. LEARY
Trial Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
Tel: (202) 514-3313
Fax: (202) 616-8470
E-mail: peter.leary@usdoj.gov

*UNITED STATES DISTRICT COURT*
*DISTRICT OF NEW JERSEY*

| | |
|---|---|
| INTERACTIVE MEDIA ENTERTAINMENT & GAMING ASSOCIATION, INC., *ET AL.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>ERIC H. HOLDER, JR., *ET AL.*,<br><br>    Defendants. | HON. GARRETT E. BROWN, JR.<br><br>*Civil Action No.* 09-1301 (GEB-TJB) |

FEDERAL DEFENDANTS' SUR-REPLY

# <u>TABLE OF CONTENTS</u>

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  There Is Still No State Law in New Jersey Permitting Sports Betting, and the Enactment of SCR 132 Does Not Change That Fact. . . . . . . . . . . . 1

II. The State of New Jersey is Still Not a Plaintiff in This Case, and the Enactment of SCR 132 Does Not Change That Fact. . . . . . . . . . . . . . . . . 3

III. The Only Impact the Enactment of SCR 132 Has on This Case is to Weaken Plaintiffs' Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# TABLE OF AUTHORITIES

## FEDERAL CASES

Edwards v. Aguillard,
   482 U.S. 578 (1987) ................................................................. 3

Elk Grove Unified School Dist. v. Nedow,
   542 U.S. 1 (2004)..................................................................... 4

Flagler v. U.S. Attorney for Dist. of New Jersey,
   No. 06-3699 (JAG), 2007 WL 2814657 (D. N.J. Sept. 25, 2007). ...................... 2

OFC Comm'r Baseball v. Markell,
   579 F.3d 293 (3d Cir. 2009). ...................................................... 5

United States v. O'Brien,
   391 U.S. 367 (1968) ................................................................ 3

## STATE CONSTITUTION

New Jersey Const. of 1947, art. IX, sect. I, para. 4................................. 1

New Jersey Const. of 1947, art. IX, sect. I, para. 1................................. 2

## STATE CASES

Atlantic City Racing Ass'n v. Attorney General,
   98 N.J. 535 (1985). ............................................................... 2

## STATE STATUTES

N.J.S.A. 52:17A-4.................................................................... 4

## INTRODUCTION[1]

The enactment of SCR 132 ameliorates none of the reasons why this lawsuit should be dismissed.  A favorable judgment would still not redress plaintiffs' alleged injuries because there is still no state law authorizing sports betting.  Nor has New Jersey become a plaintiff.  The true impact SCR 132 has on this case is to rebut the claim that PASPA chills the Plaintiff Senators' First Amendment rights and to further prove Plaintiffs' fears of preemptive injunctions are imagined.  Plaintiffs continue to lack the standing to raise their claims, and those claims lack merit in any regard.  Defendants' motion to dismiss should be granted.

## I.    There Is Still No State Law in New Jersey Permitting Sports Betting, and the Enactment of SCR 132 Does Not Change That Fact

Plaintiffs' alleged injuries are no more redressable today than they were before SCR 132 passed because *there is still no New Jersey state law permitting sports betting*.  SCR 132 only allows New Jersey's citizens, in November 2011,[2] to consider amending the State Constitution to allow the Legislature to pass state laws authorizing sports betting.  As even Plaintiffs acknowledge, "[t]he enactment of gambling legislation is a 'step at a time' process in New Jersey" and the passage

---

[1] Defendants submit this sur-reply pursuant to the Court's January 11, 2011 Order and in response to Plaintiffs' sur-replies: Docs. 61, 62, 63.  However, it remains Defendants' position that the filing of three sur-replies, totaling 25 pages, abandons Plaintiffs' prior representation and violates this Court's Order, and therefore, that Plaintiffs' briefs should be stricken.  See Doc. 65.

[2] Proposed constitutional amendments are submitted to the people at the next general election, see New Jersey Const. of 1947, art. IX, sect. I, para. 4, which occurs November 8, 2011.

of SCR 132 is just "the *first step* in that process."  Doc. 61 at 3 (emphasis added).

Before a state law authorizing sports betting in New Jersey can exist, not only

must voters approve a constitutional amendment 11 months from now, but

afterwards, actual legislation must be enacted and become law.  All of these things

might happen—or they might not;[3] in any event, they have not happened yet.

Plaintiffs make the rather puzzling assertion that "[f]or the defendants to

argue [] New Jersey must first undergo the time and expense of having its citizens

pass the referendum and then enact sports betting into law . . . in order for

plaintiffs to have standing . . . is an entirely unreasonable interpretation of Article

III [.]"  Doc. 62 at 5.  But without the referendum's passage and the subsequent

enactment of a state law, striking down PASPA will not redress Plaintiffs' alleged

injuries.  See, e.g., Flagler v. U.S. Attorney for Dist. of N.J., No. 06-3699 (JAG),

2007 WL 2814657, *3 (D. N.J. Sept. 25, 2007) (rejecting a challenge to PASPA

because invalidating it would provide a plaintiff no redress given that there is no

state law in New Jersey authorizing sports betting).  Plaintiffs cannot pretend the

procedure set forth in the New Jersey Constitution, Art. 9, §1, ¶ 1, does not exist,

or that the result of the referendum and any subsequent legislation are foregone

_____

[3] The referendum's passage, of course, is not assured.  See, e.g., Atl. City Racing Ass'n v. Attorney Gen., 98 N.J. 535, 539-40 (1985) ("The evolution of legalized gambling in New Jersey has been grudging.").  Nor is there any way to know with certainty what will happen thereafter. Accordingly, there is still only a "'mere possibility' of running afoul of PASPA."  Doc. 61 at 4.

conclusions.  Plaintiffs' standing is predicated on undeniable speculation about events that may never occur; their non-redressable claims should be dismissed.

## II.   The State of New Jersey is Still Not a Plaintiff in This Case, and the Enactment of SCR 132 Does Not Change That Fact

Plaintiffs argue the enactment of SCR 132 "is an overwhelming expression of support by both houses of the Legislature in support of [plaintiffs'] challenge to PASPA."  Doc. 62 at 4.  But no new plaintiffs have joined this lawsuit – not the Governor, not the Attorney General, not even the General Assembly.[4]  And SCR 132 does not mention this case, nor does it mention the invalidation of PASPA. Just because the Plaintiff Senators want PASPA struck down does not mean the other legislators who voted for SCR 132 necessarily share their motivation.  See, e.g., United States v. O'Brien, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it."); Edwards v. Aguillard, 482 U.S. 578, 637-638 (1987) (Scalia, J., dissenting).  What is clear is that the State of New Jersey is still not a plaintiff here—just the State Senate and various private parties, none of whom is entitled to represent the State for the reasons previously set forth by Defendants.[5]

---

[4] "Senate President Sweeney has been expressly authorized by the Senate to challenge PASPA."  Doc. 62 at 4.  He has received no such authorization from the General Assembly.

[5] Plaintiffs argue that if the Governor and General Assembly are silent, the Senate may represent the State in litigation.  See Doc. 62 at 4.  Taken to its logical conclusion, this could lead

## III.   The Only Impact the Enactment of SCR 132 Has on This Case is to Weaken Plaintiffs' Claims

The enactment of SCR 132 is relevant to this case in only two ways.  Its "resounding" passage means the Senators cannot show PASPA has chilled their First Amendment right to vote for legislation related to sports betting.  See Elk Grove Unified Sch. Dist. v. Nedow, 542 U.S. 1, 12 (2004).  And the subsequent absence of lawsuits against Plaintiffs dispels the notion that they labor under the threat of preemptive injunctions for supporting sports betting related legislation.

Finally, three points in Plaintiffs' sur-replies should be addressed.  First, Defendants plainly did not "concede" in their November 15, 2010 Notice (Doc. 55) that Plaintiffs have standing to raise a Tenth Amendment claim.  See Doc. 62 at 5.  As Defendants explained, private party plaintiffs lack standing to claim that PASPA constitutes an unwarranted intrusion into State sovereignty, and no plaintiff here is authorized to act on the State's behalf.  See Doc. 55 at 2.

Second, Plaintiffs' contention that it is "incontrovertible" that the New Jersey State Legislature is a "governmental agency" for the purposes of PASPA, Doc. 61 at 2, ignores the definition of that term provided by the Act, which

---

to a situation where the Senate entered a lawsuit "representing the State," then the General Assembly joined the case with a different position, also "on behalf of the State," and later the Governor intervened with a third position altogether.  This bizarre possibility is foreclosed by State law, of course, which vests the exclusive right to "control all litigation . . . [in] which [the State's] rights and interests are involved" in the *Attorney General*.  See N.J.S.A. 52:17A-4.

conclusively excludes the Legislature.  <u>See</u> Defs.' Reply at 1-2.

Third, to the extent that Plaintiffs allege they have standing in this case to "defend" SCR 132, Doc. 63 at 4, this claim is meritless, as Defendants have not challenged SCR 132.  To the contrary, Defendants have made clear that while PASPA might prohibit the New Jersey Lottery Commission from operating a sport betting scheme, it does not prohibit the passage of legislation.  <u>See</u> Defs.' Reply at 2, n.2.  And while PASPA might preempt a state law authorizing sports betting, pursuant to the Supremacy Clause,[6] no such state law currently exists.

## CONCLUSION

Plaintiffs lack standing, and the enactment of SCR 132 does not change that fact.  In any event, PASPA, which comes to this Court with a presumption of constitutionality, is clearly constitutional.  This case should be dismissed.

Dated: January 25, 2011              Respectfully submitted,

                                     <u>/s/ Peter D. Leary</u>
                                     PETER D. LEARY
                                     Trial Attorney, Federal Programs Branch
                                     U.S. Department of Justice, Civil Division
                                     Tel: (202) 514-3313
                                     E-mail: peter.leary@usdoj.gov
                                     *Counsel for Federal Defendants*

---

[6] There is obviously nothing unconstitutional about a federal law preempting a state law. That is what happened when the Third Circuit enjoined portions of Delaware's sports betting law pursuant to PASPA.  <u>See</u> <u>OFC Comm'r Baseball v. Markell</u>, 579 F.3d 293, 303 (3d Cir. 2009).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2011, a true and correct copy of the

foregoing was served electronically upon the following parties or counsel:

Richard L. Rudin
Weiner Lesniak, LLP
629 Parsippany Road
Parsippany, New Jersey 07054-0438
(973) 403-1100   (973) 403-0010 (fax)
rrudin@weinerlesniak.com

*Attorney for Plaintiffs the New Jersey Horsemen's Associations, and Senator
Raymond J. Lesniak*

Eric M. Bernstein
Eric M. Bernstein & Associates, L.L.C.
Two North Road
P.O. Box 4922
Warren, New Jersey 07059
(732) 805-3360   (732) 805-3346 (fax)
embernstein@embalaw.com

*Attorney for Plaintiff Interactive Media Entertainment & Gaming Association, Inc.*

Leon J. Sokol
Sokol, Behot & Fiorenzo
433 Hackensack Avenue
Hackensack, New Jersey 07601
(201) 488-1300    (201) 488-6541 (fax)
LJSokol@SBFLawfirm.com

*Attorney for Plaintiff-Intevenor Senator Stephen M. Sweeney*

> */s/ Peter D. Leary*
> PETER D. LEARY